UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-81386-CIV-ALTONAGA

**JOHN LEE MORALES-GONZALES**,

    Petitioner,

v.

**SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS**,

    Respondent.
_____/

## ORDER

**THIS CAUSE** came before the Court on *pro se* Petitioner, John Lee Morales-Gonzales's Petition Under 28 U.S.C. [section] 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1], filed on October 30, 2024.[1] Petitioner challenges the constitutionality of his criminal judgment imposed by the Fifteenth Judicial Circuit Court, in and for Palm Beach County, Florida, in case number 2009-CF-00242, for first-degree murder and kidnapping, both with a firearm. (*See generally* Pet.).

Respondent filed a Response [ECF No. 8]; an Index to Appendix [ECF No. 9] with exhibits [ECF Nos. 9-1 & 9-2]; and a Notice of Filing Transcripts [ECF No. 10] with an attached trial transcript [ECF No. 10-1]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Petition is dismissed as time barred.

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted). "Absent evidence to the contrary, [the Court assumes] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (alteration added; citation omitted).

CASE NO. 24-81386-CIV-ALTONAGA

## I. BACKGROUND

On May 21, 2009, the State of Florida indicted Petitioner on one count of first-degree murder with a firearm; two counts of kidnapping with a firearm; and one count of accessory after the fact to first-degree murder with a firearm. (*See* App. 1, Ex. 2, Am. Indictment [ECF No. 9-1] 4–6).[2] The State alleged that Petitioner, with two others, kidnapped, tortured, and murdered Jose Gonzalez. (*See* App. 1, Ex. 6, Appellant's Initial Brief [ECF No. 9-1] 31).

On October 6, 2015, a jury found Petitioner guilty of first-degree murder with a firearm and one count of kidnapping with a firearm. (*See* App. 1, Ex. 3, Verdict [ECF No. 9-1] 8–10). The trial court imposed consecutive terms of life imprisonment. (*See* App. 1, Ex. 4, Sentence [ECF No. 9-1] 12–15). On March 1, 2018, Florida's Fourth District Court of Appeal ("Fourth DCA") affirmed the conviction and sentence (*see* App. 1, Ex. 8, Order Affirming Conviction [ECF No. 9-1] 114) and issued its mandate on April 5, 2018 (*see* App. 1, Ex. 9, Mandate [ECF No. 9-1] 116).

Back at the trial court, Petitioner filed a Motion for Postconviction Relief [Under Florida Rule of Criminal Procedure 3.850] ("First Motion") on December 4, 2018. (*See* App. 1, Ex. 15, First Mot. [ECF No. 9-1] 132–74). Before the court ruled on it, Petitioner followed up with an [Amended] Motion for Postconviction Relief ("Amended First Motion") on March 11, 2019 (*see* App. 1, Ex. 16, Am. First Mot. [ECF No. 9-1] 176–88); which the trial court denied on July 9, 2021 (*see* App. 1, Ex. 18, Order Den. Am. First Mot. [ECF No. 9-1] 200–07). The Fourth DCA affirmed the trial court's denial on February 3, 2022 (*see* App. 1, Ex. 21, Order Affirming Denial of Am. First Mot. [ECF No. 9-1] 237) and issued its mandate on April 22, 2022 (*see* App. 1, Ex. 24, Mandate [ECF No. 9-1] 246).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Just days before that mandate issued, on April 14, 2022, Petitioner filed a [Second] Motion [for Post-Conviction Relief] ("Second Motion"). (*See* App. 1, Ex. 25, Second Mot. [ECF No. 9-1] 248–56). On April 20, 2022, the trial court denied the Second Motion as an "unauthorized" collateral challenge to Petitioner's conviction that sought to relitigate issues raised in the First Motion. (App. 1, Ex. 26, Order Den. Second Mot. [ECF No. 9-1] 259 (citation and quotation marks omitted)). Petitioner's appeal of that denial was later dismissed for "lack of prosecution." (App. 1, Ex. 29, Order Dismissing Appeal of Denial of Second Mot. [ECF No. 9-1] 266).

On August 17, 2022, Petitioner filed a [Third] Motion for Postconviction Relief ("Third Motion").[3] (*See* App. 1, Ex. 30, Third Mot. [ECF No. 9-1] 268–76). The State, in response, argued that it was untimely, successive, and not cognizable under Rule 3.850. (*See* App. 1, Ex. 31, State's Resp. [ECF No. 9-1] 279–81). The trial court adopted the State's response in full and denied the Third Motion. (*See* App. 1, Ex. 32, Order Den. Third Mot. [ECF No. 9-1] 284–85). The Fourth DCA affirmed the denial (*see* App. 2, Ex. 35, Order Affirming Denial of Third Mot. [ECF No. 9-2] 19) and issued its mandate on March 19, 2024 (*see* App. 2, Ex. 36, Mandate [ECF No. 9-2] 21).

On April 9, 2024, Petitioner filed a Motion for Correction of Sentence ("Fourth Motion"), raising several additional challenges to his conviction and sentence. (*See* App. 2, Ex. 37, Fourth Mot. [ECF No. 9-2] 24–28). The trial court denied the Motion in its entirety. (*See* App. 2, Ex. 38, Order Den. Fourth Mot. [ECF No. 9-2] 30–34). On September 12, 2024, the Fourth DCA affirmed the denial (*see* App. 2, Ex. 40, Order Affirming Denial of Fourth Mot. [ECF No. 9-2] 39), and it issued its mandate on October 8, 2024 (*see* App. 2, Ex. 41, Mandate [ECF No. 9-2] 41).

---

[3] Petitioner titled the Third Motion the "*Second* Motion for Post-Conviction Relief" (Third Mot. 268 (emphasis added)); as the record makes clear, however, this was Petitioner's third attempt to collaterally challenge his conviction (*see generally* Am. First Mot.; Second Mot.; Third Mot.).

On October 30, 2024, Petitioner filed the present Petition, alleging that the trial court abused its discretion by denying his motion for a mistrial (*see* Pet. 4) and claiming ineffective assistance of counsel for failing to object to (1) a legally inadequate first-degree murder charge (*see id.* 6); (2) a verdict form lacking a "principal theory interrogatory" (*id.* 9); and (3) jury instructions on "legal interlocking counts" that allegedly led to inconsistent verdicts (*id.* 11). Based on these claims, Petitioner seeks to have his conviction and sentence vacated. (*See id.* 15).

For the reasons explained, the Court does not reach the merits, as the Petition is time-barred; and Petitioner does not argue, let alone demonstrate, that equitable tolling is warranted.

## II. LEGAL STANDARDS

Federal review of state habeas petitions is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Brumfield v. Cain*, 576 U.S. 305, 311 (2015). Section 2254 provides that federal habeas relief for a person in state custody is available only if the state court decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (quotation marks omitted; quoting 28 U.S.C. §§ 2254(d)(1)–(2)).

The AEDPA imposes "[a] 1–year period of limitation . . . [for] an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1) (alterations added). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by

> the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2) (alteration added).

### III. DISCUSSION

**A. Timeliness**

A criminal judgment becomes final "when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003) (alteration added; collecting cases). Where, as here, one of Florida's district courts of appeal affirms a criminal conviction in an unelaborated opinion, the judgment becomes final 90 days after the entry of judgment. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006); *see also Williams v. Dixon*, No. 23-cv-14387, 2024 WL 147788, at *5 (S.D. Fla. Jan. 12, 2024) ("Stated plainly, for petitioners who do not (or cannot) seek discretionary review from the Florida Supreme Court, their judgment becomes final 90 days after the District Court of Appeal enters a judgment affirming the conviction and sentence unless the petitioner files a petition for writ of certiorari with the Supreme Court of the United States." (citation omitted)).

The Fourth DCA affirmed Petitioner's conviction on March 1, 2018. (*See* App. 1, Ex. 8, Order Affirming Conviction 114). Since Petitioner did not seek certiorari review from the Supreme Court, his judgment became final 90 days later, on **May 30, 2018**. *See Chavers*, 468 F.3d at 1275. The limitations period began to run the next day and "continue[d] to run until [Petitioner] file[d] a

5

state motion for post-conviction relief." *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (alterations added).

**One hundred eighty-eight (188) un-tolled days** later, Petitioner filed his First Motion in the state trial court on December 4, 2018,[4] and then his Amended First Motion on March 11, 2019. (*See generally* App. 1, Ex. 15, First Mot.; App. 1, Ex. 16, Am. First Mot.). While the First Motion (and later, his Amended First Motion) remained pending, Petitioner's AEDPA limitations period was tolled. *See San Martin*, 633 F.3d at 1266 ("Once the petitioner files a motion for post-conviction relief in state court, the AEDPA clock stops." (citing 28 U.S.C. § 2244(d)(2))).

While the trial court's denial of Petitioner's Amended First Motion was still pending on appeal, Petitioner filed his Second Motion on April 14, 2022. (*See generally* App. 1, Ex. 25, Second Mot.). Eight days later, the Fourth DCA issued its mandate, having affirmed the trial court's denial of the Amended First Motion. (*See generally* App. 1, Ex. 21, Order Affirming Denial of Am. First Mot.; App. 1, Ex. 24, Mandate). Assuming, without deciding, that the Second Motion was properly filed on April 14, 2022,[5] it tolled the one-year limitations period — and continued to do so even after judgment on the Amended First Motion became final. *See Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) (explaining that a "properly filed" state post-conviction motion is "pending" and thus tolls the limitations period until the appellate mandate issues (citations omitted)). The trial court denied the Second Motion (*see* App. 1, Ex. 26, Order Den. Second Mot.

---

[4] The Court treats December 4, 2018 — the date Petitioner signed his First Motion — as the filing date. (*See* App. 1, Ex. 15, First Mot. 173 (reflecting date signed); Resp. 2 n.2); *see also Jeffries*, 748 F.3d at 1314.

[5] If the Second Motion is construed as a "successive" petition — as suggested in the state court's order denying it (*see* App. 1, Ex. 26, Order Den. Second Mot. 259) — it was not properly filed and did not toll the limitations period, *Camacho-Villanueva v. Dixon*, No. 23-cv-14186, 2023 WL 8527101, at *5 (S.D. Fla. Dec. 8, 2023) (citation omitted); *see also id.* *4–6. This distinction, however, does not affect the Court's analysis and, as a result, the Second Motion is assumed to have been properly filed for the purposes of this Order.

258–59), and Petitioner appealed (*see* App. 1, Ex. 27, Notice of Appeal [ECF No. 9-1] 261–62).

While appeal of the trial court's denial of Petitioner's Second Motion was still pending, Petitioner filed his Third Motion on August 17, 2022.[6] (*See generally* App. 1, Ex. 26, Order Den. Second Mot.; App. 1, Ex. 30, Third Mot.). The trial court denied the Third Motion and "adopt[ed] the facts, legal analyses, and conclusions of law contained in the State's Response as its own[.]" (App. 1, Ex. 32, Order Den. Third Mot. 284 (alterations added); *see also* App. 1, Ex. 31, State's Resp.).

The trial court thus ruled, as the State had argued, that the Third Motion was untimely under state law. (*See* App. 1, Ex. 31, State's Resp. 279–80). As such, it was not properly filed for purposes of section 2244(d)(2) and did not toll the federal limitations period.[7] *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (holding that "[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of [section] 2244(d)(2)" (alteration adopted; alterations added; citation and quotation marks omitted)); *Walton v. Sec'y, Fla. Dep't of Corr.*, 661 F.3d 1308, 1310 (11th Cir. 2011) (stating "[a]n application for postconviction relief filed in state court is not properly filed if it is untimely." (alteration added; citation and quotation marks omitted)).

On **March 1, 2023**, judgment on Petitioner's Second Motion became final when the Fourth

---

[6] Respondent asserts that Petitioner's Third Motion was filed on August 17, 2022, while the record indicates a filing date of August 23, 2022. (*See* App. 1, Ex. 31, State's Resp. 278). Since the exact date does not affect the Court's timeliness determination, the Court will assume August 17, 2022 — the date more favorable to Petitioner — is correct.

[7] The Court agrees that the Third Motion was untimely under Florida law, which bars the filing or consideration of a motion to vacate a sentence more than two years after a judgment and sentence become final, unless one of three narrow exceptions applies. *See* Fla. R. Crim. P. 3.850(b)(1). Petitioner filed his Third Motion on August 17, 2022 — well past the two-year deadline, as his conviction and sentence became final on May 30, 2018, and no exceptions applied. *See id.*; (App. 1, Ex. 8, Order Affirming Conviction 114 (confirming that the Fourth DCA affirmed Petitioner's conviction on March 1, 2018)). As the State argued in its Response, adopted in full by the trial court, Petitioner did not allege any facts that would entitle him to a waiver of the time limitation. (*See* App. 1, Ex. 31, State's Resp. 280).

DCA dismissed Petitioner's appeal for "lack of prosecution." (App. 1, Ex. 29, Order Dismissing Appeal of Denial of Second Mot. 266); *Major v. Deloach*, No. 98-cv-0148, 2001 WL 102394, at *2 (S.D. Ala. Jan. 23, 2001) (finding that "judgment dismissing [a state habeas corpus] petition became final . . . when the appeal of the denial [of the petition] was dismissed for failure to prosecute." (alterations added)). Thus, the one-year limitations period began to run again.

**Four hundred and five (405) un-tolled days** later, Petitioner filed his Fourth Motion on **April 9, 2024**. (*See generally* App. 2, Ex. 37, Fourth Mot.). By then, the one-year limitations period had lapsed, as 591 un-tolled days had passed since Petitioner's conviction became final on May 30, 2018. Hence, Petitioner's Fourth Motion could not — and did not — toll the federal limitations period. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (stating "[a] state court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled" (alterations added)).

Consequently, when judgment on Petitioner's Second Motion became final on March 1, 2023, Petitioner had **177 days** left in the one-year limitations period to file the Petition. Because Petitioner did not properly file a state post-conviction motion during that window, the federal limitations period remained un-tolled and ultimately expired on **August 25, 2023**.

Petitioner filed the instant Petition on **October 30, 2024** — **431 days** after the federal limitations period expired. (*See generally* Pet.). As such, the Petition is untimely. Moreover, Petitioner does not claim actual innocence or seek equitable tolling under 28 U.S.C. section 2254. (*See generally id.*); *see also Alexander v. Dixon*, No. 23-cv-60262, 2023 WL 2646262, at *4 (S.D. Fla. Mar. 27, 2023) ("For [the actual innocence and equitable tolling] exceptions to apply, the habeas petitioner bears the burden of presenting evidence showing that he or she is entitled to rely on these equitable exceptions." (alteration added; citing *Jones v. United States*, 304 F.3d 1035,

1040 (11th Cir. 2002); other citation omitted)). Consequently, the Petition must be dismissed as time barred.

### B. <u>Evidentiary Hearing</u>

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added). Here, the pertinent facts of the case are fully developed, and they establish that habeas relief is precluded. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

### C. <u>Certificate of Appealability</u>

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable[.]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (alteration added). Upon consideration of the record, the Court finds no basis on which to issue a certificate of appealability.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner, John Lee Morales-Gonzales's Petition Under 28 U.S.C. [section] 2254 for

9

Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is **DISMISSED** as untimely.

2. A *certificate of appealability* is **DENIED**.

3. The Clerk of Court is directed to **CLOSE** this case. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of January, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**